IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARK RAMEY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. EP-16-CV-00293-FM-ATB |
| | § | |
| ALEX SALAZAR, | § | |
| ROBERT B. ARMSTRONG, | § | |
| JACOB E. BARRON, | § | |
| NORAYA JAUREQUI, | § | |
| JESSIE SINGH, and | § | |
| ROBERT THOEMKE, | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION & ORDER

On this day, the Court considered "Non-Party Corizon Health, Inc.'s Objections, Motion to Quash, and Motion for Protective Order," ("Motion") filed by Corizon Health, Inc. ("Corizon") on December 11, 2017. (ECF. No. 111). After considering the moving papers and applicable law, the Court orders that Corizon's Motion is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

I.  BACKGROUND

Corizon was initially a named defendant in the above-styled and numbered cause. On April 12, 2017, the District Court dismissed all claims against Corizon with prejudice. (ECF. No. 102, p. 39). Following the District Court's Order, Plaintiff's claims consist of deliberate indifference against all remaining Defendants and state law negligence against Defendants Salazar and Jaurequi. (*See id*.).

On November 27, 2017, Plaintiff propounded a Subpoena Duces Tecum containing written deposition questions and requests for production on Corizon. (ECF. No. 111, p. 13-23). On December 11, 2017, Corizon filed the instant Motion seeking to quash Plaintiff's Subpoena

Duces Tecum. (ECF. No. 111). Seven days later, Plaintiff responded to Corizon's Motion. (ECF. No. 112).

However, because the discovery requests were subsequently amended and Plaintiff and Corizon had failed to confer, the Court ordered them to file a joint notice enumerating the remaining discovery requests and objections thereto. (ECF. No. 120). On January 25, 2018, Plaintiff and Corizon filed their joint notice. (ECF. No. 121). Accordingly, the matter is now ripe for the Court to adjudicate.

## II. LEGAL STANDARDS

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." and the party resisting discovery bears the burden of showing how a request is objectionable. Fed. R. Civ. P. 26(b)(1); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). However, the Federal Rules allow for the issuance of a protective order to protect a non-party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). If one of the above is present, the Court may, *inter alia*, forbid the discovery, prescribe a different discovery method, forbid inquiry into certain matters, or limit the scope of discovery. *Id*. The Court has broad discretion when determining whether to issue a protective order and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Moreover, as Plaintiff utilized a Subpoena Duces Tecum, Rule 45 applies. Rule 45 provides, in relevant part, that "[a] subpoena may command . . . [the] production of documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(c)(2). Upon timely motion, the Court must quash or modify a subpoena if it "requires disclosure of privileged or

other protected matter, if no exception or waiver applies" or it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The individual seeking to quash or modify must meet 'the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive.'" *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003) (citing *Williams v. City of Dall.*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). When, as is the case here, "a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1)." *Id.* (citing *Williams*, 178 F.R.D. at 110).

## III. ANALYSIS

The following discovery requests remain at issue:

**Request No. 9:** Produce the following documents from Alex Salazar's and Noraya Jauregui's personnel files:

> c. all documents that discuss their performance, including but not limited to performance evaluations, for the last five (5) years;
>
> d. all complaints made against them by either co-workers or third parties for the last five (5) years (including complaints of discrimination, policy violations, and/or other alleged misconduct);
>
> e. all documents that discuss or refer to disciplinary action taken against them for the last five (5) years; and
>
> f. if applicable, all documents that discuss the reason for [their] separation, if they no longer works [sic] for Defendant.

**Request No. 10**: Produce all documents or communications regarding trainings provided to Noraya Juaregui and Alex Salazar at the El Paso County Jail, including how medical care is provided and how referrals to specialists are made.

**Request No. 12**: Produce all inmate complaints or grievances related to the provision of medical care by Alex Salazar and/or Noraya Jauregui from January 1, 2009 to the present.[1]

(ECF. No. 121, p. 1-2). Corizon objects to Requests Numbers 9 and 12 as overbroad, irrelevant,

---

[1] The Court agrees with Corzion that Requests 9(d) and 12 are duplicative.

and disproportionate to the needs of the case. (*Id*. at 2). Corizon also asserts that credentialing and peer review documents "may be protected." (*Id*.). Similarly, Corizon objects to Request No. 10 as overbroad in time and irrelevant. (*Id*.).

As only these discovery requests remain at issue, the Court will address each objection in turn and deny the remainder of Corizon's Motion as moot.

    **a.    Overbreadth & Relevance**

The Court agrees with Corizon that the discovery requests are overbroad as written. As Corizon correctly identifies, seeking entire personnel files without narrowing the request to Plaintiff's claims is facially overbroad. *Zamora v. GC Servs., LP*, 2017 U.S. Dist. LEXIS 77649, at *12 (W.D. Tex. 2017) (collecting cases for the proposition that requesting a "complete employment file" is overbroad). However, performance evaluations, complaints, and disciplinary actions may reveal other incidents of denying inmates medical care. Other negative incidents relating to inmate medical care may be relevant to circumstantially proving a "culpable state of mind," which is necessary for a deliberate indifference claim. *Sinkov v. Americor, Inc.*, 419 F.App'x 86, 89 (2d Cir. 2011) (In deliberate indifference cases, juries may "review[] all the evidence and draw[] an inference of actual knowledge from circumstantial evidence."); *see Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (prior incidents of misconduct may be relevant if they "involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim."). They may also be relevant to establish that Defendants intended their actions. *See* Fed. R. Evid. 404(b). Accordingly, the Court finds that, if the discovery is limited to documents and incidents relating to medical treatment of inmates, the requested discovery is relevant, not overbroad, and not disproportionate to the needs of the

case.[2]

Similarly, requesting these documents for the prior five years is not overbroad in time. Although "the appropriate bounds will vary depending on the specific circumstances of each case, courts . . . have often taken the default position of limiting discovery to no earlier than five years from the date on which the allegedly tortious conduct occurred." *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (collecting cases); *see also Ellison v. Patterson-UTI Drilling Co., LLC*, 2009 U.S. Dist. LEXIS 88313, at *11 (S.D. Tex. 2009) (collecting cases) ("In the instant case, a request for information about employees covering an eight-year period is too broad. A five-year period is more appropriate."). Accordingly, insofar as the discovery requests seek information dating back five years, the Court finds that such requests are not overbroad. To the extent that Request Numbers 10 and 12 seek information dating back further, the Court finds that said requests should be limited to five years.

    b.    **Credentialing & Peer Review Documents**

The Court rejects Corizon's argument that the credentialing and peer review documents are confidential. "The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege . . . . But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 625 (W.D. Tex. 2005). "[T]here is no evidentiary privilege for medical peer review documents [or credentialing documents] under federal law." *Dean v. Tex. Tech Univ. Health Scis. Ctr.*, 2017 U.S. Dist. LEXIS 162178, at *26 (N.D. Tex. 2017) (citation omitted). Consequently, to be available, state law must provide such a privilege and it must be applicable to the instant lawsuit.

---

[2]     The Court notes that Corizon did not re-allege their HIPAA objection. However, any production of documents should comply with the applicable provisions of HIPAA. *See* 45 C.F.R. § 164 *et seq*.

The relevant sections of the Texas Health and Safety Code provide that the records of medical committees and medical peer review committees are privileged. Tex. Health & Safety Code Ann, § 161.032(a); *see also* Tex. Occ. Code Ann. § 160.007. To apply this state privilege law in the 1983 context, the Court must "weigh[] the policies behind the privilege against the policies favoring disclosure." *Finch*, 638 F.2d at 1343. However, there exists a "'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Id*. Consequently, "[c]laims of privilege are disfavored, particularly in § 1983 cases." *Johnson v. Owens*, 612 F. App'x 707, 719 (5th Cir. 2015).

First, Corizon failed to argue any policy that favors nondisclosure of these documents, and accordingly, this argument is waived. *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) (a party waives an argument by failing to brief it). Second, because the purpose of 1983 is to provide an independent federal forum, allowing Corizon to shield employees' potential misconduct makes little sense. Indeed, as Magistrate Judge Horan recognized:

> Even considering the four-factor test that the Fifth Circuit set out in *Finch* and any reliance interest that Defendants may claim in Section 161.032(a), the Court finds no basis to recognize this state law privilege as a matter of comity after weighing the policies behind the privilege against the policies favoring disclosure, particularly where "[t]he purpose of enacting § 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials" and "there is a special danger in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged."

*Dean*, 2017 U.S. Dist. LEXIS 162178, at *26-27 (citations omitted). This Court similarly finds that allowing the credentialing and peer review documents to be privileged creates a special danger in the § 1983 context, particularly in a case of medical deliberate indifference. Accordingly, the Court finds that the requested documents are not privileged.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that "Non-Party Corizon Health, Inc.'s Objections, Motion to Quash, and Motion for Protective Order" (ECF. No. 111) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS THEREFORE ORDERED** that Corizon shall produce documents responsive to the following requests:

1. all documents that discuss Alex Salazar's and Noraya Jauregui's performance relating to medical care provided to inmates for the last five (5) years;

2. all complaints made against Alex Salazar and Noraya Jauregui by either co-workers, third parties, or inmates for the last five (5) years regarding the provision of medical care to inmates;

3. all documents that discuss or refer to disciplinary action taken against Alex Salazar and Noraya Jauregui for the last five (5) years, if the disciplinary action relates to medical care provided to inmates;

4. if applicable, all documents that discuss the reasons for Alex Salazar's and Noraya Jauregui's separation from employment, if the separation relates to medical care provided to inmates; and

5. all documents or communications regarding trainings provided to Noraya Juaregui and Alex Salazar at the El Paso County Jail for the last five (5) years relating to how medical care is provided to inmates and how referrals to specialists are made.

**SIGNED** and **ENTERED** this 2nd day of February, 2018.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**